STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ROBERT LORAY, DEFENDANT-APPELLANT.

Argued October 7, 1963—Decided November 18, 1963.

*Mr. Samuel D. Bozza* argued the cause for defendant-appellant.

*Mr. Brendan T. Byrne,* Prosecutor of Essex County, argued the cause for plaintiff-respondent (*Mr. Peter Murray,* Assistant County Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

SCHETTINO, J. This is a felony-murder case. Appellant, Robert Loray, and two others, Stanley Wilson and George Cooper, were convicted of a first degree murder with a recommendation of life imprisonment. They were tried in one trial on two separate indictments; one, for felony (robbery) murder, *N. J. S.* 2A:113–1; the second, for robbery, *N. J. S.* 2A:141–1, of the same victim in the same incident. The jury did not consider the robbery indictment, the court having instructed such to be unnecessary if guilt was found on the murder charge. Loray appeals as of right. *R. R.* 1:2–1(c). Wilson and Cooper have not joined in this appeal.

On February 24, 1961, at approximately 11:20 P. M., a patrolman was sent to Essex and James Streets, Newark. Upon arriving there, he saw a man lying face up at the northwest corner. The man had a deep gash in his forehead and appeared to have been severely beaten. The patrolman detected no breathing. The man's coat was ripped, and part of it was found on the northwest side of the street, the remainder on the northeast side. The coat pockets were turned inside out. The Police Emergency Squad, upon arrival at 11:26 P. M., attempted resuscitation, but was unsuccessful. At 11:35 P. M. he was pronounced dead by a doctor.

A resident of 32 James Street, directly opposite the corners of James and Essex Streets, testified that at approximately 11:15 P. M. he turned off his television, went downstairs, and saw his dog at the front window aroused by something. Upon

looking out, he noticed a man in a black raincoat and hat looking up and down Essex and James Streets. He then saw two other men cross briskly from the northeast corner to the northwest corner and stoop over a person lying on the sidewalk. These two men started going through the pockets of the man lying there. Believing the man to be intoxicated, the resident yelled, "Let that man alone," whereupon the two men leaning over the victim fled down Essex Street; the other in the raincoat fled up James Street. He telephoned the police and upon their arrival at the scene told them that he had seen "three negro males, two 6-feet tall, with no description as to the height of the other one, one wearing a red sweater, and one wearing a black raincoat, with a short brim hat."

There was no other witness. At 11:40 P. M. Wilson, who was wearing a red sweater, was stopped in the area, questioned, and arrested. He implicated two others whom he knew only by their nicknames: "Blue" [Loray], and "Coop" [Cooper].

Loray and Cooper were arrested the next morning. Shortly after his arrest, Loray was taken to the room at Police Headquarters where Wilson was completing his statement concerning the happenings of the previous night. A copy of the statement was given to Loray, a copy to Wilson, and a copy to a detective named Leonardis. Wilson's statement was read in the presence of Loray while Loray followed the reading with the copy given to him. Upon completion of the reading, Leonardis asked Loray if what Wilson said in this statement about Loray was true. Leonardis testified that Loray replied "that everything was the truth except for the fact where he [Wilson] said he [Loray] punched and kicked the man. He said he didn't punch or kick the man." Wilson's statement accused Loray of planning the robbery, assaulting the victim, taking money from the victim, and splitting the proceeds with the other two.

Loray was 16 years and 21 days old on the day of the mugging. He was initially charged with juvenile delinquency in the Juvenile and Domestic Relations Court. The cause was

transferred by that court to the prosecutor for criminal prosecution under *R. R.* 6 :9–7.

## I.

Within two hours after he was taken into custody, Loray began to give his own statement and it was completed within a short time. Loray contends that his statement was not voluntary and should have been excluded from evidence. Loray attacks the voluntariness of his statement on the ground that he was physically abused and threatened by police officers while being driven to police headquarters and while there.

Confessions are competent evidence, in a constitutional sense, only when voluntarily given. While all relevant circumstances (including the age of the defendant) must be considered by the trial court in determining its admissibility before a confession may be admitted in evidence, *State v. Tassiello*, 39 *N. J.* 282, 293 (1963), the State must sustain its burden of establishing that the defendant's will has not been overborne and that the fundamental fairness requirement of the due process clause has not been violated. *State v. Fauntleroy*, 36 *N. J.* 379, 395 (1962). This test governs regardless of the method of coercion, be it physical violence or psychological pressure. *State v. Wade*, 40 *N. J.* 27, 35 (1963).

The trial court followed the prescribed guides in determining the issue. It heard the witnesses concerning Loray's arrest, interrogation, and the making of the statement. The trial court decided, in its discretion, to take the testimony on admissibility in the presence of the jury. *State v. Walker*, 33 *N. J.* 589, 592 (1960). While such testimony was being submitted, the trial court correctly informed the jury that if the court admitted the statement in evidence, it would be solely for the jury to decide whether or not it was voluntary or involuntary and that if the jury decided it was involuntary, the jury would have to disregard it entirely.

Testifying on the issue of admissibility, Loray stated that, while riding in back of the police car on the way to police

headquarters, he was hit by a certain police sergeant. But on cross-examination, he was unable to state which officer struck him because the officer he accused on direct was not seated in the rear with defendant but was the driver of the police car. Loray also testified that a prosecutor's detective threatened "to bash in my face." Loray also claimed he was put in fear immediately upon arrival at police headquarters because he saw a woman being struck. He claimed additionally that while being interrogated he was kicked in the shins by the prosecutor's detective and although he was not bruised, the kick left a "red mark." All these charges were denied by the accused police officers and by other officers who were present. On direct, cross and redirect the police officers testified that no coercion of any sort was practiced by any one of them on Loray.

Evidence of force or threat of force came solely from Loray. There was no independent evidence to substantiate his allegations. Loray's inability to keep his story straight as to who hit him in the police car weakened his credibility.

■ After all the testimony was in on this issue, the trial court excused the jury and heard argument of counsel on the question of voluntariness as it affected admissibility. Obviously the trial court believed the testimony of the police officers and not that of the defendant for it held the statement admissible. It recalled the jury, informed it that the confession was now in evidence and, quite properly, made no reference to the court's finding that it was voluntary. *Cf. State v. Smith,* 32 *N. J.* 501, 549 (1960).

■■ Appellate review of the court's determination that a statement is voluntary and therefore admissible must be "both wide and penetrating to make sure these constitutional rights have not been trampled upon." *State v. Smith,* 32 *N. J.,* at *p.* 544. We have reviewed and weighed all the evidence on the question in the manner required by *Smith,* 32 *N. J.,* at *p.* 549 and conclude that the trial court's determination was correct.

## II.

■ Loray also claims reversible error in the trial court's denial of his motion for a judgment of acquittal. In assessing a motion for acquittal the trial court is obliged "to view the State's evidence in its entirety, giving the State the benefit of all of its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom." *State v. Fiorello,* 36 *N. J.* 80, 90 (1961).

■ Loray contends that the State failed to carry its burden of proving that Loray participated in the assault and robbery of the victim. The evidence of Loray's participation could be established by Loray's confession in which he admitted being present, taking money from the victim's pockets, and dividing the proceeds with his co-defendants, as well as from the implied adoption by Loray of Wilson's confession when, according to a detective's testimony, Loray read Wilson's statement and then said that everything in it was true except for the charge that Loray had punched and kicked the victim. Loray contended that Wilson's statement was admissible only against Wilson and could not be used against Loray. However, the testimony of the detective regarding the words and conduct of Loray at the time he read the statement was sufficient evidence from which the jury could conclude that Loray assented to the portions of Wilson's statement implicating Loray except with reference to the assault. See *Donnelly v. State,* 26 *N. J. L.* 601, 613 (*E. & A.* 1857); 20 *Am. Jur., Evidence* § 493; *cf. State v. Sorge,* 125 *N. J. L.* 445, 447 (*E. & A.* 1940).

When it admitted Wilson's statement in evidence the trial court delineated its impact upon Loray. It said:

"It is for you to say under the facts and circumstances in the case whether or not it is evidential as against the defendant Loray. Detective Leonardis testified to the effect that a copy of the Wilson statement was given to Loray, and Loray read it. Then he was asked whether or not that which was said in the statement, that is, in the Wilson statement, was true insofar as reference made to him, and

Detective Leonardis said that Loray said, 'Yes, everything therein which alluded to me is correct except that which said I struck the decedent.' .

If you find as a fact that what Detective Leonardis said is the fact, then of course it would be binding upon the defendant Loray. If you find it is not the fact, then the same admonition which I have given you with reference to the defendant Cooper applies, and it would not be evidential against him; it would not have any probative force insofar as he is concerned, and it would be only evidential as against Wilson."

Loray's denial of the assault on the victim would not necessarily exculpate him from the murder charge. Absent Loray's participation in the actual assault, a fact on which there is some dispute, proof that Loray conspired and assisted in the commission of the robbery would be enough to inculpate him with respect to the murder. *State v. Smith, supra* (32 *N. J.*, at *p.* 521).

### III.

Loray claims that the trial court also erred in not granting his motion for a judgment of acquittal on the ground that the State failed to produce sufficient evidence to find Loray guilty beyond a reasonable doubt of the criminal agency which caused the victim's death. Loray contends that the only medical testimony produced by the State as to criminal causation was that of the Essex County Medical Examiner who admitted on cross-examination that in the absence of the injuries, he would ascribe the victim's death to severe coronary arteriosclerosis with an acute congestive heart failure due to acute coronary insufficiency and further, that the victim could have died in the same manner in which he did without the assault because he was a candidate for a sudden death due to his heart condition. Thus, argues Loray, the mitigating factor that the victim could have died solely from his condition destroyed or at least neutralized the proof on the part of the State that defendant was responsible for the death. At best, contends Loray, the testimony on criminal causation was in equipoise and as the evidence was in equipoise, the State

failed to carry its burden of proving defendant guilty beyond a reasonable doubt.

The State counters by arguing that at the end of the State's case on the motion for a judgment of acquittal, such medical testimony was sufficient to present a jury question on the issue of criminal causation. Even though the victim was a candidate for sudden death because of a pre-existing heart condition and could have died at any moment from a heart attack without the injuries inflicted by defendant, the doctor testified that the primary cause was acute congestive heart failure but that the *precipitating* and *contributory* causes were the injuries resulting from the assault. Loray's counsel admitted that "There isn't any question in my mind that [such] testimony raises a question of fact."

We agree and find no error.

 It appears that defendant makes a corollary argument that had the victim not been subject to a pre-existing heart condition, he would not have died as a result of the injuries here inflicted. The fact that a victim of an assault is in a weakened condition or suffers from disease and as a result succumbs to a blow which might not be fatal to a person in perfect health does not lessen the criminal responsibility for causing death. We know of no duty imposed upon a victim to supply a guarantee of good health to a robber.

We agree with Mr. Justice Rothrock who stated in *State v. Smith,* 73 *Iowa* 32, 34 *N. W.* 597, 601–602 (*Sup. Ct.* 1887), that:

"* * * It surely ought not to be the law that because a person is afflicted with a mortal malady, from which he must soon die, whether his ailment be caused by natural or artificial causes, another may be excused for acts of violence which hasten or contribute to or cause death sooner than it would otherwise occur. Life at best is but of short duration, and one who causes death ought not to be excused for his act because his victim was soon to die from other causes, whatever they may be * * *."

See also *Rutledge v. State,* 41 *Ariz.* 48, 15 *P. 2d* 255, 257 (*Sup. Ct.* 1932); 47 *A. L. R. 2d* 1072, 1077; 26 *Am. Jur.* Homicide § 52.

## IV.

Loray also contends that the trial court erred in not compelling the State to elect whether to proceed on the felony-murder or on the robbery indictment thus subjecting Loray to prejudice which "bordered on double jeopardy."

Clearly, Loray was not subjected to double jeopardy. As the defendant states in his brief, "the separation into its components for the purpose of *separate* prosecution of an episode that constitutes a single criminal act, is the essence of double jeopardy." (Emphasis added) The cases cited by Loray all involved situations where the trial on a second indictment followed in time the trial on the first. *State v. Greely*, 30 *N. J. Super.* 180 (*Cty. Ct.* 1954), affirmed 31 *N. J. Super.* 542 (*App. Div.* 1954); *State v. Cooper*, 13 *N. J. L.* 361 (*Sup. Ct.* 1833); *State v. Mowser*, 92 *N. J. L.* 474 (*E. & A.* 1919).

We must assume from the oral argument that Loray does not really claim he was subjected to double jeopardy but was subjected to "a prejudice" which "bordered on double jeopardy." We agree with the State that what Loray is really disturbed about is the propriety of the joint trial of two separate indictments.

The argument is not well founded. *R. R.* 3:5–6 states:

"The court may order two or more indictments or accusations to be tried together if the offenses and the defendants, if there is more than one, could have been joined in a single indictment or accusation."

Here, both crimes could have been charged in the same indictment in separate counts as each offense is "based on the same act or transaction." *R. R.* 3:4–7. The obvious purpose of the procedure adopted was to enable the jury to convict on a robbery charge if it found that death came about from natural rather than criminal causes. On our review of the record we conclude that the trial court acted properly.

## V.

Loray also contends (but for the first time on this appeal) that the failure of the Juvenile Court to advise him of his right to counsel and to assign counsel to him renders the Juvenile Court hearing and its referral order a nullity. Plain error affecting substantial rights of the defendant is asserted. *R. R.* 1:5–1(a).

Reliance is placed on *State v. Tuddles*, 38 *N. J.* 565 (1962), decided some twenty-one months after the referral proceedings and more than six months after Loray's trial. However, in that case, unlike the present case, the appeal was taken before the trial on the indictment from an order refusing to entertain, after the appointment of counsel, an application for reconsideration by the Juvenile Court. In *State v. LaPierre*, 39 *N. J.* 156, 181 (1963) we said:

"So here, the indictment was valid. Defendant's remedy, if he conceived that he was prejudiced by the lack of counsel before the juvenile court, was to make a seasonable application before it after counsel was assigned, as was done in *Tuddles*."

Defendant's brief and appendix contain the following from the Juvenile Court's files: (1) a complaint dated February 28, 1961 charging defendants Loray and Wilson with juvenile delinquency and setting forth the specific acts of assault, robbery, and homicide; (2) order of referral to Essex County Prosecutor; and (3) letter of referral from the Juvenile Court to the Essex County Prosecutor dated March 2, 1961 reciting that defendants Loray and Wilson appeared in Juvenile Court that morning on the above-mentioned complaint and that "Pursuant to rule 6:9–7 the matter is being referred to you for appropriate action." These items were not part of the record in this case but were added to defendant's appendix under the heading "Addenda." On oral argument Loray concedes that he is not sure whether the above are the complete proceedings of the Juvenile Court. He made no application before the Juvenile Court for a statement in lieu of a record so that an appellate court could know what more, if anything,

transpired on that subject, or for a reconsideration of the order of referral after our opinion in *Tuddles*.

Hence we do not have before us an appeal from any action of the Juvenile Court. Rather on an appeal from the conviction upon the indictment defendant seeks to present for the first time an issue which was not before the trial court and as to which no record was made. We cannot accept an issue thus offered in a vacuum. Accordingly, we do not reach the question whether there may be an attack upon the order of referral after there has been a trial upon the indictment.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, PROCTOR, HALL, SCHETTINO and HANEMAN—6.

*For reversal*—None.