210 N.J. Super. 43 (1986)
509 A.2d 206
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HERBERT LEE SMITH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 14, 1986.
Decided April 25, 1986.
*45 Before Judges GAULKIN, DEIGHAN and STERN.
Claudia Van Wyk, Assistant Deputy Public Defender, argued the cause on behalf of defendant-appellant (Thomas S. Smith, Jr., Acting Public Defender, attorney).
Leslie Schwartz, Deputy Attorney General, argued the cause on behalf of plaintiff-respondent (Irwin I. Kimmelman, Attorney General, attorney; Linda L. Yoder, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by STERN, J.S.C., temporarily assigned.
Defendant was convicted of felony murder as a result of the death of a man who suffered a heart attack when his car was involved in an accident with one driven by defendant fleeing from the scene of an armed robbery. We hold that the proofs could justify a conviction for felony murder, but that the charge in this case was insufficient on the subject of causation. Therefore, a new trial must be ordered on the felony murder count. We affirm the other convictions.

I
Defendant was indicted for felony murder contrary to N.J.S.A. 2C:11-3a(3) (count one); attempted kidnapping, contrary to N.J.S.A. 2C:5-1; 2C:13-1b(1) (count two); armed robbery, contrary to N.J.S.A. 2C:15-1a(2) (count three); possession of a sawed-off shotgun, contrary to N.J.S.A. 2C:39-3b (count four); possession of a handgun for unlawful purpose (against Colleen Reilly), contrary to N.J.S.A. 2C:39-4a (count five); possession of a handgun for unlawful purpose (against Julia McCarthy), contrary to N.J.S.A. 2C:39-4a (count six) and possession of a *46 handgun without a permit, contrary to N.J.S.A. 2C:39-5b (count seven). Following trial by jury defendant was convicted on all counts. The court merged the convictions on counts five and six into the conviction for armed robbery and imposed the following sentences:
Count one: 30 years with no parole eligibility;
Count two: 10 years, with five years parole ineligibility, consecutive;
Count three: extended term of 30 years, 15 years parole ineligibility, consecutive;
Count four: 5 years with 2 1/2 years parole ineligibility, consecutive;
Count seven: 5 years with 2 1/2 years parole ineligibility, consecutive.
Defendant was also ordered to pay $125 to the VCCB. He appeals and advances the following contentions:
POINT I THE STATE FAILED TO ESTABLISH DEFENDANT'S GUILT BEYOND A REASONABLE DOUBT ON COUNT ONE BECAUSE IT (A) FAILED TO PROVE THAT THE ACCIDENT CAUSED THE FATAL HEART ATTACK OR THAT DEFENDANT CAUSED THE ACCIDENT AND (B) FAILED TO PROVE EITHER CULPABILITY OR FORESEEABILITY WITH RESPECT TO THE FATAL RESULT (U.S. CONST., AMEND XIV: N.J. CONST., ART. I, PAR. 1.[sic]
POINT II THE JUDGE, BY REFUSING TO PROVIDE THE JURORS WITH THE STATUTORY DEFINITION OF CAUSATION OR TO INSTRUCT THEM THAT A FINDING OF CAUSATION REQUIRED A FINDING THAT DEFENDANT'S FAULT PRECIPITATED THE ACCIDENT, DEPRIVED DEFENDANT OF DUE PROCESS OF LAW (U.S. CONST. AMEND XIV: N.J. CONST ART I, PAR 1)
POINT III THE JUDGE, BY PRECLUDING DEFENSE COUNSEL FROM ASKING BOTH MEDICAL EXPERTS WHETHER THEY HELD THEIR OPINIONS BEYOND A REASONABLE DOUBT, ABUSED HIS DISCRETION AND VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND CONFRONTATION OF WITNESSES (U.S. CONST., AMEND, XIV, VI, N.J. CONST., ART. I, PAR. 1, 10.)
POINT IV THE STATE'S FAILURE TO ALLEGE OR PROVE THAT DEFENDANT INTENDED TO CONFINE THE ALLEGED KIDNAPPING VICTIM FOR A "SUBSTANTIAL PERIOD," AND THE JUDGE'S FAILURE TO DEFINE THE TERM IN HIS CHARGE, VIOLATED DEFENDANT'S RIGHT TO INDICTMENT BY GRAND JURY AND TO DUE PROCESS OF LAW (U.S. CONSTI. AMEND V, XIV; N.J. CONST. ART I, PAR. 1, 8).
POINT V THE JUDGE, BY REFUSING TO ASK VOIR DIRE QUESTIONS ON PREJUDICE RELATED TO AUTOMOBILE ACCIDENTS, ABUSED HIS DISCRETION AND VIOLATED DEFENDANT'S RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY (U.S. CONST AMEND VI, XIV; N.J. CONST. ART I, PAR. 9, 10).

*47 POINT VI THE JUDGE, BY REFUSING TO MERGE DEFENDANT'S CONVICTIONS OF ROBBERY AND GUN POSSESSION INTO OTHER COUNTS, SUBJECTED DEFENDANT TO DOUBLE JEOPARDY (U.S. CONST AMEND V, XIV, N.J. CONST. ART I, PAR. 11).
POINT VII DEFENDANT'S AGGREGATE SENTENCE OF EIGHTY YEARS' IMPRISONMENT WITH AN AGGREGATE FIFTY-FIVE YEAR MANDATORY MINIMUM WAS MANIFESTLY EXCESSIVE BECAUSE THE JUDGE FAILED TO CONSIDER DEFENDANT'S GRAVE PSYCHIATRIC HISTORY.

II
On October 25, 1982 at approximately 10:00 a.m. Julia McCarthy was working at the courtesy desk at the Mayfair Foodtown in Union when she was confronted by defendant at the end of the counter pointing a handgun at her. Defendant instructed her to fill a bag with money and said "Give me five minutes" as he left the store. When he disappeared around the corner, McCarthy ran to the back and informed Gary Tresch, the store manager, that she had been robbed. Tresch ran out of the store in pursuit of defendant. He saw a brown car being driven away and noted that the license plate was 205-SBT. As the car turned Tresch saw a sawed-off shotgun in defendant's hand. A customer of the store, Frank Hanck, observed defendant get into the car and Tresch chasing the car. He testified that the car was going fast as it exited the parking lot.
A few minutes later, Edwin L. Mackie was by the window of his store, in Union, when he heard a "loud thunderous" noise outside. He ran outside in time to see a brown car driving away, which did not stop at the stop sign at the end of the street. Mackie also saw a man, later identified as Kelton Barnes, emerging from a damaged vehicle. Barnes told Mackie that the other car had come "barreling out of the side street," hit him, and continued on. Mackie took Barnes into his office to call the police. However, Mackie had to place the call because Barnes' "hands were shaking" so badly that he was "unable to dial."
*48 When Union Township Police Officer Powell responded, he found Barnes walking back and forth outside his car in the heavy rain. Barnes seemed very nervous and upset, but the only observable injury was a laceration on his hand. At first Barnes said that he was all right, but as he sat with Powell in the patrol car for a credentials check, he began shaking and said that he didn't feel well. Barnes then slumped over in the seat. Powell performed cardial pulmonary resuscitation techniques until a medical unit arrived, but Barnes was declared dead on arrival at the hospital at 10:57 a.m.
Meanwhile, around 10 a.m. Colleen Reilly was driving down Morris Avenue in Union when she was hit from behind by a brown car which "kept on going." She followed the car until it pulled over across the street from the Union police station. She saw defendant duck down in the driver's seat at the same time she saw a police car near the station. When Reilly and defendant got out of their cars she asked him if he had insurance. When he admitted that he did not, she said that she was going to call the police. He asked her to wait a minute and returned to his car. Thereafter defendant exited his car carrying a duffle bag and tried to enter the passenger side of the Reilly auto. Reilly got out of her car. Defendant suggested that they exchange information in her car but she refused and suggested that they do it in the police station.
Defendant then pulled out a gun from his pocket, showed it to Reilly and said, "Lady, get back in the car, you're going to drive me some place." When she refused he repeated his demand but she managed to run across the street into the police station.
Detectives Robert Jarman and John Hynes were in their police car responding to the Foodtown robbery when they observed Reilly's encounter with defendant. Jarman estimated the time as 10:10 in the morning. Jarman saw defendant nudging Reilly and then saw her run towards police headquarters. Defendant got into Reilly's car and was attempting *49 to start it when the officers approached him. A frisk revealed that defendant had a silver .357 magnum revolver in his pocket. Defendant was then arrested.

III
Defendant claims that the State failed to prove beyond a reasonable doubt that defendant caused the automobile accident and that the accident was the cause of decedent's heart attack and ensuing death. The basic test for evaluating the sufficiency of evidence is:
[w]hether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt. [State v. Brown, 80 N.J. 587, 591 (1979), citing with approval State v. Reyes, 50 N.J. 454, 459 (1971)].
State v. Moffa, 42 N.J. 258, 263 (1964) (same standard for appellate review). See also Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) reh. den. 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State v. Martinez, 97 N.J. 567, 571-572 (1984); State v. Mayberry, 52 N.J. 413 (1968), cert. den. 393 U.S. 1043, 89 S.Ct. 673, 21 L.Ed.2d 593 (1969); State v. Latimore, 197 N.J. Super. 197, 208 (App.Div. 1984), certif. den. 101 N.J. 328 (1985). The approach is the same whether the evidence is circumstantial or direct. State v. Mayberry, supra, 52 N.J. at 437. A jury may draw an inference from a fact whenever it is more probable than not that the inference is true; the veracity of each inference need not be established beyond a reasonable doubt in order for the jury to draw the inference. State v. Brown, supra, 80 N.J. at 592; State v. DiRienzo, 53 N.J. 360, 376 (1969). Circumstantial evidence need not preclude every other hypothesis in order to establish guilt beyond a reasonable doubt. State v. Mayberry, supra, 52 N.J. at 436. Further, evaluation of the credibility of witnesses and the weight and worth of the evidence is a function of the jury. State v. Ingenito, 87 N.J. 204, 211 (1981).

*50 A
Defendant was charged with a felony murder under N.J.S.A. 2C:11-3a(3) which imposes liability where
the actor ... is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery ... and in the course of such crime or of immediate flight therefrom, any person causes the death of a person other than one of the participants....
N.J.S.A. 2C:2-3 defines causation as follows:
a. Conduct is the cause of a result when:
(1) It is an antecedent but for which the result in question would not have occurred; and
(2) The relationship between the conduct and result satisfies any additional causal requirements imposed by the code or by the law defining the offense.
* * * * * * * *
e. When causing a particular result is a material element of an offense for which absolute liability is imposed by law, the element is not established unless the actual result is a probable consequence of the actor's conduct.
Felony murder is a crime of transferred intent, based on a showing of intent to commit the underlying felony even though there is no intent to kill. State v. Madden, 61 N.J. 377, 384 (1972); State v. Stenson, 174 N.J. Super. 402, 407 (Law Div. 1980), aff'd o.b. 188 N.J. Super. 361 (1982), certif. den. 93 N.J. 268 (1983). Under preCode law the intent to commit the felony was sufficient to convict for murder. This was continued under the Code.[1] Thus, under the Code, in this case, the jury would have to find that the heart attack was a probable consequence of defendant's conduct incident to the felony.
Defendant claims that the State failed to produce sufficient evidence to show a causal link between defendant's conduct and Barnes' heart attack. The State offered the testimony of Dr. Maxmillian Schoss, an Assistant Medical Examiner, who stated *51 that despite the damaged condition of Barnes' heart, the stress to which he was subject prior to the heart attack was the precipitating cause of the heart attack. According to Dr. Schoss the cause of death was "severe coronary sclerosis, severe myocardial sclerosis, and probably ventricular fibrillation." Dr. Schoss found that Barnes had very severe heart disease, but, in his opinion, Barnes died "as a result of the stress he was subject to prior to ... the time he died." In contrast, Dr. Henry Siegel, defendant's expert, testified that it was not possible to determine that the accident was the precipitating cause of the heart attack. Dr. Siegel stated that the cause of Barnes' death was "occlusive coronary arteriosclerosis, myocardial hypertrophy and fibrosis." He further stated that Barnes "could have died at any time," just in the course of his normal activities without any stress, because "[h]is heart was that bad." Dr. Siegel testified that in this case it was not possible to say as an expert with a reasonable degree of medical certainty that the heart attack was caused by the accident. Thus, the jury was presented with conflicting expert opinions as to whether the accident was a cause of Barnes' heart attack. It then became a question for the jury to weigh that testimony and to reach a conclusion. Defendant cannot claim that the verdict was based on insufficient evidence simply because the jury did not agree with his expert.
The question of sufficient evidence of causation with respect to felony murder was recently addressed by the Illinois court in People v. Martin, 112 Ill. App.3d 486, 68 Ill.Dec. 151, 445 N.E.2d 795 (Ill. App. 1983). In that case the stress of an assault inflicted upon the victim who had severe heart disease caused such a strain on victim's heart that he died. The court concluded that, "The fact that a person without the deceased's history of heart disease probably would have survived the attack is immaterial .... the determination of whether there was a causal relationship between the defendant's conduct and the decedent's death is a matter properly left to the trier of fact." 68 Ill.Dec. at 162, 445 N.E.2d at 806. See also State v. Noren, 125 Wis.2d *52 204, 371 N.W.2d 381 (Wis.App. 1985); W.S.L. v. State, 470 So.2d 828 (Fla.App. 2 Dist. 1985).
In State v. Reardon, 486 A.2d 112 (Sup.Jud.Ct. of Maine, 1984), the medical examiner testified that a robbery victim's fatal heart attack and death were caused by the robbery.
As factors supporting his expert conclusion, he cited the fact that coronary arteriosclerotic disease is very common in people of Mr. Webb's age of 67 years and that the disease was unusually severe in Mr. Webb's case, adding that sudden stresses do play a role in precipitating heart attacks in such circumstances. Dr. Ryan concluded that the precipitating cause of Mr. Webb's heart attack and death was any one of several potential stress-causing incidents, such as the robbery itself, Mr. Webb's chase of his attackers, or his thinking about the robbery soon afterwards, especially in reporting it to the police. [486 A.2d at 117.]
In adjudging defendant guilty at a bench trial, the trial judge found that the robbery caused "such stress to Mr. Webb, that he suffered a heart attack which would not have occurred but for defendant's conduct and that it was a reasonably foreseeable consequence" of a robbery of a person of Webb's age, appearance and condition. 486 A.2d at 117. Although Webb was the victim of the robbery, the following observations of the Supreme Judicial Court of Maine in affirming the conviction are appropriate here:
We conclude that there was sufficient evidence from which a trier of fact rationally could have found beyond a reasonable doubt proof of the charge of felony murder in terms of its essential elements, i.e. that the defendant's perpetration of a robbery upon the person of Mr. Webb in fact caused Mr. Webb's death and that such death was a reasonably foreseeable consequence of the robbery. The presiding justice was warranted in finding beyond a reasonable doubt from all the evidence in the case, including the expert testimony, that `but for' the robbery and the immediate sequels to it of chasing his attackers and recounting the distressing episode to the police, Mr. Webb would not have died of heart failure, and that any concurrent cause attributable to his predisposition to heart problems on account of his severe arteriosclerotic condition was not alone sufficient to produce his death. See State v. Snow, 464 A.2d 958, 962-63 (Me. 1983). [486 A.2d at 117-118].
We are satisfied that the jury had sufficient medical evidence from which it could conclude that the accident was the precipitating factor of Barnes' heart attack and therefore his death. While the Code redefines the concept of "causation", we are *53 satisfied that the Code intended to preserve the result in State v. Loray, 41 N.J. 131 (1963) where the victim died from a heart attack suffered as the result of a robbery. See II Final Report, supra, at 49-51, 156-158. The language of the Court in Loray is analogous in this situation:
Loray claims that the trial court also erred in not granting his motion for a judgment of acquittal on the ground that the State failed to produce sufficient evidence to find Loray guilty beyond a reasonable doubt of the criminal agency which caused the victim's death. Loray contends that the only medical testimony produced by the State as to criminal causation was that of the Essex County Medical Examiner who admitted on cross-examination that in the absence of the injuries, he would ascribe the victim's death to severe coronary arteriosclerosis with an acute congestive heart failure due to acute coronary insufficiency and further, that the victim could have died in the same manner in which he did without the assault because he was a candidate for a sudden death due to his heart condition. Thus, argues Loray, the mitigating factor that the victim could have died solely from his condition destroyed or at least neutralized the proof on the part of the State that defendant was responsible for the death. At best, contends Loray, the testimony on criminal causation was in equipoise and as the evidence was in equipoise, the State failed to carry its burden of proving defendant guilty beyond a reasonable doubt.
The State counters by arguing that at the end of the State's case on the motion for a judgment of acquittal, such medical testimony was sufficient to present a jury question on the issue of criminal causation. Even though the victim was a candidate for sudden death because of a pre-existing heart condition and could have died at any moment from a heart attack without the injuries inflicted by defendant, the doctor testified that the primary cause was acute congestive heart failure but that the precipitating and contributory causes were the injuries resulting from the assault. Loray's counsel admitted that `There isn't any question in my mind that [such] testimony raises a question of fact.'
We agree and and find no error.
It appears that defendant makes a corollary argument that had the victim not been subject to a pre-existing heart condition, he would not have died as a result of the injuries here inflicted. The fact that a victim of an assault is in a weakened condition or suffers from disease and as a result succumbs to a blow which might not be fatal to a person in perfect health does not lessen the criminal responsibility for causing death. We know of no duty imposed upon a victim to supply a guarantee of good health to a robber. [41 N.J. at 139-140] [emphasis in original].

B
In this case there was testimony that the accident was, in fact, a probable consequence of defendant's act during flight *54 from the robbery.[2] He was observed driving fast and almost hitting cars as he exited the Foodtown parking lot; he was allegedly speeding and did not stop at a stop sign after hitting Barnes' car, and he then hit the Reilly vehicle. From the testimony the jury could have inferred that in his haste to leave the scene of the robbery defendant was driving in such a manner that would probably cause harm to other drivers and pedestrians in his path. State v. Brown, supra. Thus, a finding that the accident was a probable consequence of defendant's conduct is supported by sufficient credible evidence in the record. Accordingly, while we are compelled to reverse the conviction because of errors in the charge, there is no evidentiary insufficiency precluding retrial. See Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); State v. Tropea, 78 N.J. 309, 313-314 (1978).

IV
Defendant contends that failure of the court to properly instruct the jury on the statutory elements of causation under N.J.S.A. 2C:2-3 requires reversal and we agree.
We, of course, must examine the charge as a whole to determine its overall effect. State v. Wilbely, 63 N.J. 420, 422 (1973). However, a charge must adequately set forth all elements of the offense charged, State v. Green, 86 N.J. 281, 288 (1981), and it is a mandatory duty that the trial judge instruct the jury as to the fundamental principles of law which control the case. State v. Grunow, 102 N.J. 133 (1986); State v. Butler, 27 N.J. 560, 595 (1958); State v. Holmes, 208 N.J. Super. 480 (App.Div. 1986).
The trial judge charged the jury as follows:

*55 Accordingly, before you can find the defendant guilty of the First Count the State must prove beyond a reasonable doubt that the defendant committed the crime of robbery, and, second, that the death of the victim was caused by the defendant at some time within the course of the commission of that crime, including its aftermath of flight.
So, there are just two elements that the State has to prove as far as this crime is concerned. They have to prove, number one, that the defendant committed the crime of robbery. I've already defined that for you under the Third Count. So, although I say there's only two elements to the felony murder, you must bear in mind that one of those elements is robbery. So, the things I told you about robbery apply here.
Putting aside the concessions of counsel, you still must be satisfied that the defendant committed the crime of robbery; second, that the death of Mr. Barnes was caused by the defendant during the defendant's flight from the commission of the crime of robbery.
If you find after consideration of all the evidence the State has proved to your satisfaction beyond a reasonable doubt each of these elements as I have explained them to you, one, that the defendant committed the crime of robbery, and, two, that the death of the victim was caused by the defendant, was caused during the defendant's attempt to escape, that is, flee from the robbery, then you must find the defendant guilty of the First Count.
On the other hand, if you find that the State has failed to prove to your satisfaction beyond a reasonable doubt that this defendant caused the death of Kelton Barnes, then you must find the defendant not guilty of the First Count.
Now, as you deal with the First Count of this indictment, this is what we call felony murder, it is the law of our State that if somebody who has committed certain crimes, such as robbery, either in the course of committing that crime or flight from the commission of the crime, that caused the death of another person they are guilty of murder.
Although the judge stated that a requisite element of the felony murder charge is causation, he never defined "causation" to the jury. Despite the State's claim that "the trial court repeatedly stressed that the State had the burden of proving beyond a reasonable doubt that defendant caused the death of Mr. Barnes", the absence of any definition of causation as defined in N.J.S.A. 2C:2-3 left the jury without "the legal implements to reach and form a verdict." State v. Wynn, 21 N.J. 264, 271 (1956), cited in State v. Butler, supra, 27 N.J. at 596.
Causation under the Code is different than it may be understood by lay persons generally. With respect to felony murder it imposes a two-pronged test, the "antecedent but for" of *56 2C:2-3a as well as a finding that the result was a "probable consequence of the actor's conduct." See N.J.S.A. 2C:2-3e. A proper charge required inclusion of both elements.
The trial judge seemed to subscribe to the view that the perpetrator is "absolutely liable" for felony murder. He advised the jury:
Here, what the State is charging is that this defendant during his flight from the commission of the robbery in the supermarket caused the death of Kelton E Barnes. Under the law in which this count is brought it does not matter that the act which caused the death was committed recklessly or unintentionally or accidentally. The perpetrator is as guilty of murder as he would be if he had purposely or knowingly inflicted the act that caused the death.
The judge properly noted that the State had to prove, beyond a reasonable doubt, that (1) defendant committed the crime of robbery and (2) "that the death of Mr. Barnes was caused by the defendant during the defendant's flight from the commission of the crime of robbery." He then recited his recollection of the expert testimony and advised the jury that "You must be satisfied beyond a reasonable doubt that it was the automobile accident and what flowed from that automobile accident that caused the death at that time and place of the victim." The judge then continued:
It's not a question of who's at fault as far as the automobile accident is concerned. We're not dealing here with an automobile accident case in that sense as far as whose fault it was. If the result of that accident caused the death of Mr. Barnes, then, under our law, the defendant would be guilty of the First Count.
The law makes a person responsible for his actions and the results thereof when he undertakes a course of conduct such as robbery.
In this final comment the judge erred. As noted in the Commentary to the Code:
In our opinion, the adoption of the Code approach will have a much greater effect upon the decisional process than it is likely to have upon the result in specific cases. For example, in the Loray case the issue to be put to the jury under § 2C:2-3b would be whether the death of an elderly robbery-mugging victim from a heart attack during the crime (since it is the same kind of injury as that designed) was `too remote to have a just bearing on the gravity of the actor's offense.' This would replace the question now put to the jury of whether the attack was the `proximate cause' of the death in that it was the `precipitating' and `contributing' natural and probable cause of it. State v. *57 Loray, supra [41 N.J.] at 140-141. A similar analysis applied to the Reitze and Meyers cases show the same result. Reitze would, in all likelihood, result in a judgment of acquittal on the ground that the fall resulting in death was too remote or accidental to have a just bearing on the actor's liability. The death in Meyers of the wife could be found by the jury not to be too remote or accidental in the light of the attack by the defendant upon her. [II Final Report of the N.J.Criminal Law Rev. Comm'n, 51.]
See also State v. Myers, 7 N.J. 465 (1951) (death of wife who jumped into river on defendant-husband's command); State v. Reitze, 86 N.J.L. 407 (Sup.Ct. 1914) (tavern owner prosecuted for death of intoxicated patron who fell outside the bar).
The issue of causation was crucial in this case. Therefore, the failure of the trial court to define that concept had the clear capacity of producing an unjust result. Accordingly, the conviction must be reversed and the matter remanded for a new trial.

V
Because the matter must be retried we address defendant's claims that the court's refusal to allow counsel to inquire whether the medical experts held their opinions "beyond a reasonable doubt" constituted an abuse of discretion. According to defendant, that refusal "subverted the whole purpose of expert testimony."
The purpose of expert testimony is to "contribute materially to the ascertainment of the truth." State v. Cavallo, 88 N.J. 508, 517 (1982); State v. Hurd, 86 N.J. 525, 536 (1981), quoting State v. Cary, 49 N.J. 343, 352 (1982). Medical opinion testimony "must be couched in terms of reasonable medical certainty or probability; opinions as to possibility are inadmissible." Johnesee v. Stop & Shop Cos., Inc., 174 N.J. Super. 426, 431 (App.Div. 1980); Gribbin v. Fox, 130 N.J.L. 357, 359 (Sup.Ct. 1943), aff'd 131 N.J.L. 187 (E. & A. 1944); In re Quackenbush, 156 N.J. Super. 282, 287 (Cty.Ct. 1978). A medical opinion is not properly framed in terms of "reasonable doubt." As stated by the Supreme Court of Pennsylvania:

*58 `Beyond a reasonable doubt' is a legal standard. Medical causation and legal causation are qualitatively different in their application.... Whether the Commonwealth's evidence is sufficient to warrant a finding of causal connection is initially a legal question for the court, but whether it is persuasive beyond a reasonable doubt is for the jury to say. [Comm v. Webb, 449 Pa. 490, 496, 296 A.2d 734, 737 (1972)].
See also Comm. v. Ilgenfritz, 466 Pa. 345, 353 A.2d 387 (Pa. 1976).
Counsel was permitted to examine the experts about the degree of certainty with which they could determine the cause of death. Counsel asked Dr. Schoss if he could say "as a fact" that the stress caused the accident. Counsel asked Dr. Siegel if he could make his conclusions with a reasonable degree of medical certainty, and whether there was a "reasonable possibility" that the cause of death could have been something other than the accident. Particularly since the court permitted counsel to question witnesses about their degree of certainty, the court did not abuse its discretion in refusing to allow counsel to use the words "beyond a reasonable doubt."

VI
Defendant challenges his conviction for attempted kidnapping in three respects. First, he claims that the indictment was deficient because it did not specifically allege that defendant intended to confine the victim Colleen Reilly for a substantial period of time. Second, defendant alleges that the State failed to introduce sufficient evidence to establish that defendant intended to confine the victim for a substantial period of time. Third, defendant contends that the trial court failed to adequately define the term "substantial period" in the jury charge.

A
Count two of the indictment alleged that defendant "did unlawfully attempt to confine Coleen Reilly, for the purpose of *59 facilitating his flight after the commission of Robbery, contrary to the provisions of N.J.S. 2C:5-1 and N.J.S. 2C:13-1(b)(1)...."
N.J.S.A. 2C:13-1b(1) provides, in part:
b. A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes:
(1) to facilitate commission of any crime or flight thereafter;
* * * * * * * *
"Whether an indictment should be dismissed or quashed lies within the discretion of the trial court." State v. New Jersey Trade Waste Ass'n, 96 N.J. 8, 18 (1984). As our Supreme Court has observed, "[s]uch discretion should not be exercised except on `the clearest and plainest ground' and an indictment should stand `unless it is palpably defective.'" Id. at 18-19, quoting State v. Weleck, 10 N.J. 355, 364 (1952). "Similarly, if an indictment alleges all the essential facts of the crime, the charge is sufficiently stated and the indictment should not be dismissed unless its insufficiency is `palpable'." Id. See also State v. LaFera, 35 N.J. 75, 81 (1961); R. 3:7-3. "The fundamental inquiry is whether the indictment substantially misleads or misinforms the accused as to the crime charged." State v. Wein, 80 N.J. 491, 497 (1979). The main purpose of the indictment is to allow the defendant to prepare an adequate defense. Therefore the indictment must clearly identify and charge the criminal offense. Ibid; State v. Talley, 94 N.J. 385, 392 (1983).
Defendant bases his claim of insufficiency on the fact that the indictment did not give defendant notice of which alternative clause of N.J.S.A. 2C:13-1b the State would rely on to sustain the charge. Defendant raised this issue in his unsuccessful pretrial motion to dismiss the indictment and now contends that he had "no way of knowing whether the State would allege attempted removal from a residence or business, or removal for a substantial distance, or confinement for a substantial period." However, as the State responds, the word *60 "confine" in the indictment and the statutory reference were sufficient to sustain the indictment even though the words "substantial period" did not appear. Cf. e.g., State v. Wein, supra. Moreover, we find the evidence of attempted kidnapping sufficient to sustain the conviction.

B
In State v. Masino, 94 N.J. 436 (1983), the Supreme Court comprehensively discussed the kidnapping statute. Recognizing that "the legislature realized that the risk of harm attendant upon isolation is the principal danger of the crime" of kidnapping, id. at 446, the Court held that an asportation is considered to be a "substantial distance" if it is
more than merely incidental to the underlying crime. That determination is made with reference not only to the distance travelled but also to the enhanced risk of harm resulting from the asportation and isolation of the victim. That enhanced risk must not be trivial. [Id. at 447].
The court in this case charged as follows:
In order for you to find the defendant guilty of kidnapping the State is required to prove each of the following elements beyond a reasonable doubt, one, that the defendant unlawfully confined a person for a substantial period, and second, that the confinement was for the purpose of facilitating the commission of any crime of flight thereafter.
* * * * * * * *
Now, when we use the words, `for a substantial period', because it is an attempt there is no way to tell how long he may have intended to hold her in that car. A substantial period in this sense is a flexible concept. Doesn't have to be any particular period of time, but it depends upon the total circumstances. It depends upon the purpose with which he was attempting to confine her, if that is your finding.
* * * * * * * *
If you are satisfied beyond a reasonable doubt that it was the purpose of the defendant at that time to confine her to that car, to keep her in that car, for a period sufficient to effectuate his flight, then you, depending upon your view of the facts, might determine that that was an attempt to keep her confined for a substantial period.
Although Masino, supra, analyzed the "substantial distance" phrase, in our view the rationale for its holding applies to the "substantial period" language as well where the kidnapping is *61 alleged as incident to another crime. The "heart" of N.J.S.A. 2C:13-1b is the "isolation and increased risk of harm" to the victim. Masino, supra, 94 N.J. at 447. Thus, the Court mandated that in the future trial judges should instruct juries "in terms of sufficient criminal significance that is more than incidental to the underlying crime and that substantially increases the risk of harm to the victim." Ibid. We conclude that the same rationale applies to the confinement provisions and that the same instruction must be given with regard to confinement for a "substantial period." The court failed to so charge in this case.
In Masino the charge indicated that distance was a "relative concept" and that the asportation had to have some "bearing on the evil at hand." State v. Masino, supra, 94 N.J. at 447. Thus the charge did not rise to the level of reversible error. While the court in this case referred to the period of confinement as "flexible," we conclude that under the facts and given the attempted confinement at such a substantial distance from the robbery, the same rationale applies. Accordingly, the conviction for attempted kidnapping is affirmed.

VII
We are satisfied that consideration of the remaining issues is not necessary in light of the retrial. We believe that any questions relating to sentence should abide the retrial. If defendant is convicted of felony murder, the armed robbery will merge into it and the sentence can be reviewed in that light. See State v. Taylor, 80 N.J. 353 (1979); State v. Nichols, 71 N.J. 358 (1976). If defendant is acquitted on the murder count, the four remaining sentences should be reconsidered by the trial judge in light of State v. Yarbough, 100 N.J. 627 (1985). Because we find the terms imposed on counts two, three, four and seven to be unassailable, reconsideration of the consecutive feature can abide the retrial.
*62 Accordingly, the conviction for murder is reversed and the matter remanded for retrial on that count. The convictions on counts two, three, four and seven are affirmed.
NOTES
[1] Felony murder is now subject to an affirmative defense, irrelevant in this case, with respect to a non-perpetrator accomplice or conspirator in the felony who can "demonstrate that he did not assume a homicidal risk" and thereby remains responsible for the felony but not for the homicide. See II Final Report of the N.J. Criminal Law Revision Comm'n, 157. See also N.J.S.A. 2C:11-3a(3). See also N.J.S.A. 2C:1-1e; 2C:2-2c.
[2] A felony murder can occur during the flight from a robbery, as well as during the felony itself. See N.J.S.A. 2C:11-3a(3). Flight from a robbery is itself part of a "robbery." See N.J.S.A. 2C:15-1.