232 N.J. Super. 384 (1989)
557 A.2d 327
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM WHITTED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1989.
Decided April 21, 1989.
*385 Before Judges MICHELS, MUIR, Jr., and KEEFE.
Claire Drugach, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Claire Drugach, of counsel and on the brief).
*386 Jessica S. Oppenheim, Deputy Attorney General, argued the cause for respondent (Cary Edwards, Attorney General, attorney; Jessica S. Oppenheim, of counsel and on the brief).
The opinion of the court was delivered by MUIR, JR., J.A.D.
On September 6, 1984, William Pegeese, a 62-year-old man with a badly diseased heart, died shortly after defendant burglarized his bedroom. Tried to a jury for felony murder (N.J.S.A. 2C:11-3a(3)), third-degree burglary (N.J.S.A. 2C:18-2), and third-degree theft (N.J.S.A. 2C:20-3), defendant admitted the burglary and theft, but vigorously contested the felony murder on grounds of causation. Defendant offered evidence through medical experts that the victim died of natural causes and not as the result of the burglary. The State offered evidence through medical experts that the victim would have been alive the next day had the burglary not occurred. On the issue of felony-murder causation, the State requested a charge that the jury be instructed it had to find that but for the burglary the victim would not have died and that his death was the probable consequence of the burglary. The trial judge elected not to charge on probable consequence. The jury found defendant guilty on all charges. Defendant's primary challenge on this appeal is the judge's decision not to charge probable consequence. We hold the judge's election constituted reversible error. Accordingly, we reverse and remand for a new trial. In doing so, however, we reject defendant's contention there was insufficient evidence to justify a conviction for felony murder, had there been a correct charge.

I.
Defendant testified to the essential facts of the burglary and theft. He learned in the early evening of September 5, 1984, that Pegeese (victim) had a sizeable amount of cash on his person. Around 1 a.m. the next morning, defendant entered *387 the victim's bedroom through a window as the victim lay asleep in bed. Defendant relieved the victim of approximately $1000. While defendant claimed he took the money from the pocket of a coat hanging on a chair, the State offered contrary evidence; specifically, it presented witnesses who testified the victim said, "[Defendant] got me. He flipped me over and took my money."
The victim's sister testified he was upset by the burglary. She described him as normally very calm. But after the robbery, he exhibited anger. A police officer who interviewed the victim about twenty minutes after the crime, as the victim lay in bed, stated he was calm at that time. The victim died twenty minutes later.
State medical experts, a pathologist and cardiologist, concluded that despite the victim's very diseased heart, he would have been alive the next morning had the burglary not occurred. They reasoned that the burglary caused the victim to be stressed and excited. The stress and excitement caused a more rapid heart beat. Given the victim's severe coronary artery disease (85 to 90% occluded), the rapid heart beat created a demand for oxygen in the heart. The coronary artery disease prevented the heart from getting the oxygen. This led to tachycardia, arrythmia and an embolus (plaque clot) breaking off from an existing arteriosclerotic area of the heart. The embolus went into the left circumflex coronary artery and occluded it, cutting off the blood supply and causing the death.
Defense experts, a pathologist and an internist specializing in cardiovascular disease, agreed the occlusion of the left circumflex coronary artery caused the death. However, they disagreed that an embolus caused the fatal blockage. They contended that since it was a fresh clot and there was no source within the heart to show where an embolus broke away, the occlusion occurred as the result of a thrombus  an eruption of the arteriosclerotic plaque at the site of the blockage. They maintained that a thrombus, unlike an embolus, is generated by natural causes, not by stress or excitement.
*388 All experts agreed that in light of the severely diseased coronary arteries and vessels, the 62-year-old victim lived a day-by-day existence. Indeed, his treating physician testified that though the victim was susceptible to stress, the kind of attack he suffered was not necessarily stress related.

II.
We turn first to defendant's contention the trial judge erred in his charge on causation when he failed to instruct the jury that it had to find the victim's death was the probable consequence of the burglary, as well as the antecedent but-for cause. In doing so, defendant relies on State v. Smith, 210 N.J. Super. 43 (App.Div.), certif. den. 105 N.J. 582 (1986), decided after the jury verdict here. In Smith, we held the requisite causation in felony murder encompassed both the antecedent but-for and probable consequence. Id. 210 N.J. Super. at 54-56.
N.J.S.A. 2C:2-3 provides, in pertinent part:
a. Conduct is the cause of a result when:
(1) It is an antecedent but for which the result in question would not have occurred; and
(2) The relationship between the conduct and result satisfies any additional causal requirements imposed by the code or by the law defining the offense.
* * * * * * * *
e. When causing a particular result is a material element of an offense for which absolute liability is imposed by law, the element is not established unless the actual result is the probable consequence of the actor's conduct.
N.J.S.A. 2C:2-3 constitutes a substantial change, a "fresh approach," to the issue of causation. II Final Report of New Jersey Criminal Law Revision Commission, Commentary (1971) at 49 (Code Commentary). It treats the "but-for cause as the causality relationship that normally should be regarded as sufficient." Id. However, it adds N.J.S.A. 2C:2-3a(2) to deal with circumstances where the but-for cause "may prove unacceptable in dealing with particular offenses." Code Commentary, supra, at 50. It also adds paragraph 3e to deal with strict liability crimes. Thus, the "additional causal requirement *389 imposed by the Code" for strict liability crimes becomes the probable consequence criterion of N.J.S.A. 2C:2-3e.[1]
Prior to the adoption of the Comprehensive Drug Reform Act of 1986, N.J.S.A. 2C:35-1 et seq. (Drug Reform Act), felony murder was the predominant strict liability crime of the Code. In N.J.S.A. 2C:35-9, the Drug Reform Act established a new first degree offense which would hold drug distributors strictly liable for any deaths proximately resulting from their illegal distribution activities, even if those deaths were due to accidental drug overdoses.[2]
In the Commentary to the Comprehensive Drug Reform Act of 1986 (1987) (Assembly Commentary), the Assembly Judiciary Committee noted the comparability of the strict liability of N.J.S.A. 2C:35-9 to the strict liability of felony murder. However, with respect to causation, it stated:
This section specifically establishes the element of causation which must be proved by the State in a prosecution for this offense. The element of causation specifically defined for this particular offense is patterned after the general penal code provisions found at N.J.S.A. 2C:2-3. Notwithstanding the provisions of subsection e. of N.J.S.A. 2C:2-3, which would ordinarily apply with respect to strict liability offenses, however, the State need not show in a *390 prosecution under this section that the death was a "probable consequence of the defendant's conduct." [Assembly Commentary, at 23; emphasis added.]
From this reasoning, it is clear the Assembly Committee read causation in felony murder to encompass both antecedent but-for and probable consequence. Thus, the legislative history of N.J.S.A. 2C:35-9 lends support for the conclusion that causation for felony murder requires the State to prove beyond a reasonable doubt both but-for cause and probable consequence. Based on the foregoing, the trial judge should have charged the jury as the State requested.
However, the trial judge instructed the jury on causation as follows:
Remember in this case the State contends that the defendant caused the death of William Pegeese while he was engaged in the commission of a burglary.
Next the State must prove beyond a reasonable doubt that the death of William Pegeese was caused, and I mean by that, actually caused during the course of the commission of the crime of burglary by the defendant.
This element is not established unless you first find that the State has proved beyond a reasonable doubt that the defendant's conduct was an antecedent but for which the death of the victim would not have occurred.
Let me read that back to you. This element is not established unless you first find that the State has proved beyond a reasonable doubt that the defendant's conduct was an antecedent but for which the death of the victim would not have occurred.
Put another way. William Pegeese would not have died when he died if it were not for the burglary. Or put another way. But for the burglary there would have been no fatal seizure at that time.
Remember, the State must prove beyond a reasonable doubt that Mr. Pegeese's death was the direct causal result of the burglary committed by the defendant, that is Mr. Pegeese's death was actually caused by the burglary.
To recapitulate. Before you can find the defendant guilty of murder as alleged in the First Count of the Indictment, you must first find that the State has proved beyond a reasonable doubt all of the following elements of this crime.
1. William Pegeese died on the date and at the place alleged in the First Count of the Indictment.
2. The defendant was engaged in the commission of a burglary at the time and place alleged in the First Count of the Indictment.
3. The death of William Pegeese was the direct causal result of the defendant's commission of that crime, that is the crime of burglary.

*391 Now, should you find that the State has failed to prove beyond a reasonable doubt any one or all of the elements of the crime of murder as alleged in the First Count of the Indictment, then you must find the defendant not guilty on the First Count of the Indictment.
The State argues the omission of the probable consequence requirement did not constitute reversible error. It argues the charge as a whole sufficiently defined causation and, noting defendant's failure to object to the charge, it further asserts that even if the judge erred, that failure constituted harmless error. We disagree.
An integral aspect of the right to trial by jury is the principle that "[a]ppropriate and proper charges to the jury are essential to a fair trial." State v. Green, 86 N.J. 281, 287 (1981). To insure a fair trial, among other things, a court is obliged to instruct the jury adequately on all elements of the offense charged. State v. Smith, supra, 210 N.J. Super. at 54. Additionally, the court must explain comprehensively the fundamental principles of law which control the case, as well as the questions the jury must determine. State v. Green, supra, 86 N.J. at 288. Only when the charge as a whole meets these standards can it survive challenge on appeal. See State v. Wilbely, 63 N.J. 420, 422 (1973).
Moreover, erroneous instructions in matters or issues which are material to the jury's deliberation are presumed to be reversible error. State v. Grunow, 102 N.J. 133, 148 (1986); State v. Collier, 90 N.J. 117, 123 (1982). Stated differently, jury instructions "are poor candidates for rehabilitation under the harmless error theory." State v. Weeks, 107 N.J. 396, 410 (1987). Consequently, appellate resolution of a challenge to a jury charge in a criminal case cannot turn on the absence of defense counsel's objection to the charge, where an essential element of the offense charged was omitted in the jury instructions.
Causation is an essential element for jury determination. See State v. Smith, supra, 210 N.J. Super. at 51. Where causation is composed of two elements, both elements must be submitted *392 to the jury for its consideration. This is particularly so where, as here, the element, probable consequence, is designed to avoid finding criminal liability for a result not designed, contemplated or risked consciously by the defendant. Code Commentary, supra, at 53.
Both the testimony of the State's experts and defendant's experts raised the issue of whether the victim's death was the probable consequence of the burglary. Indeed, all the experts agreed the victim's heart was so diseased that he could have died at any time. That agreement reflected the possibility the jury could conclude that death by natural causes was a probable consequence of his weakened heart. It raised the issue whether there was credible evidence that the victim's death naturally followed from defendant's conduct.
Moreover, the fact that the jury asked for and heard an entire read-back of the defendant's internist's testimony would suggest the difficulty it was having with causation. A probable consequence charge could have changed their minds. Thus, even if viewed in a plain error context, the failure to charge probable consequence had the clear capacity to bring about an unjust result, and is sufficient to raise a reasonable doubt that it led the jury to a result it might not have otherwise reached. See R. 2:10-2; State v. Czachor, 82 N.J. 392, 402 (1980).

III.
Defendant also contends the State failed to present sufficient evidence to prove beyond a reasonable doubt that defendant's burglary caused decedent's heart attack and resultant death. In evaluating the contention, we are concerned only with the sufficiency of the evidence to present the issue to the jury. The test in that instance is:
Whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find defendant guilty of the charge beyond a reasonable doubt. [State v. Reyes, 50 N.J. 454, 459 (1967).]
*393 Applying this test to circumstances where the judge also charged probable consequence as part of causation, we conclude a reasonable jury could have found defendant guilty of felony murder beyond a reasonable doubt.
The State presented sufficient evidence, when all inferences are drawn in its favor, to prove beyond a reasonable doubt that defendant, while engaged in the admitted burglary, caused the death of the victim. Both of the State's medical experts gave opinions based on reasonable medical certainty that had the burglary not occurred the victim would not have died at the time he did. Expert testimony couched in terms of reasonable medical certainty or probability forms a sufficient basis for a jury issue on causation under the circumstances. State v. Smith, supra, 210 N.J. Super. at 57-58.
Given our determination, we find it unnecessary to resolve any of defendant's remaining contentions.
Reversed and remanded for a new trial.
NOTES
[1] The language of N.J.S.A. 2C:2-3e is identical to Section 2.03(4) of the Model Penal Code (MPC). See Code Commentary, supra, at 51. The MPC Commentary states: "The principle of this subsection is that there should be no liability [in felony murder] unless the actual result is a probable consequence of the actor's conduct." Modern Penal Code Commentary § 2.03(4).
[2] N.J.S.A. 2C:35-9b sets forth:

The provisions of N.J.S. 2C:2-3 (governing the causal relationship between conduct and result) shall not apply in a prosecution under this section. For purposes of this offense, the defendant's act of manufacturing, distributing or dispensing as the cause of a death when:
(1) The injection, inhalation or ingestion is an antecedent but for which the death would not have occurred; and
(2) The death was not:
(a) too remote in its occurrence as to have a just bearing on the defendant's liability; or
(b) too dependent upon conduct of another person which was unrelated to the injection, inhalation or ingestion of the substance or its effect as to have a just bearing on defendant's liability. [Emphasis added].