224 N.J. Super. 364 (1988)
540 A.2d 879
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT LAFRANCE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 12, 1988.
Decided April 14, 1988.
*366 Before Judges MICHELS and GAYNOR.
Alfred A. Slocum, Public Defender, attorney for appellant (Vincent G. Ricigliano, Jr., designated attorney, on the brief).
John P. Goceljak, Special Deputy Attorney General-in-Charge, attorney for respondent (Steven E. Braun, Special Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
A ten-count indictment returned by a Passaic County grand jury charged defendant with second degree burglary contrary to N.J.S.A. 2C:18-2 (count one), two counts of fourth degree theft contrary to N.J.S.A. 2C:20-3 (count two and three), first degree kidnapping contrary to N.J.S.A. 2C:13-1b(1) and/or (2) (count four), two counts of first degree robbery contrary to N.J.S.A. 2C:15-1 (counts five and six), first degree aggravated sexual assault contrary to N.J.S.A. 2C:14-2a(3) (count seven), two counts of third degree aggravated assault contrary to N.J.S.A. 2C:12-1b(5)(a) (counts eight and nine) and fourth degree resisting arrest contrary to N.J.S.A. 2C:29-2a (count ten).
*367 Following a jury trial, defendant was convicted of all the charged offenses. He was sentenced to a prison term of ten years with a five-year parole disqualifier on count one, six months each on counts two and three, 30 years with a 15-year parole disqualifier on count four, 20 years with a ten-year parole disqualifier on each of counts five, six and seven and 18 months each on counts eight, nine and ten. The sentence on count one was to be served concurrently with the sentences imposed on counts four and seven. The sentences on count two was merged with that imposed on count five and the sentences imposed on counts three and six were also merged. The sentence on count four was consecutive to the sentence imposed on count seven. The sentence on count five was concurrent with that imposed on count four, but consecutive to the sentence imposed on count seven. The sentence on count six runs concurrently with the sentence imposed on counts four and five but consecutive to that imposed on count seven. The sentences imposed on counts eight and nine are concurrent with the sentence on count seven while the sentence on count ten was merged with that imposed on counts eight and nine. The aggregate sentence was 50 years with a 25-year parole ineligibility. A VCCB penalty of $2,225 was also assessed.
In appealing from his convictions and sentences, defendant advances the following contentions:
I. THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUSTAIN A GUILTY VERDICT FOR KIDNAPPING, ACCORDINGLY DEFENDANT'S CONVICTION SHOULD BE REVERSED.
II. THE EVIDENCE PRESENTED BY THE STATE WAS INSUFFICIENT TO SUSTAIN A GUILTY VERDICT FOR FIRST DEGREE ROBBERY.
III. THE CUMULATIVE UNDULY PREJUDICIAL TESTIMONY ADMITTED AT THE TRIAL BELOW DEPRIVED THE DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
IV. THE SENTENCE IMPOSED BY THE COURT WAS EXCESSIVE AND THE COURT ERRED IN FAILING TO CONSIDER MITIGATING FACTORS.
At approximately 1:00 a.m. on February 17, 1985, B.R. was awakened in his home by the sound of breaking glass. He arose and walked to the back room where he was confronted by defendant. Upon being asked what he was doing in the R. *368 home, defendant told Mr. R. to shut up, stating that he had a gun and would give the orders. Defendant's hand was inside his coat and positioned in such a way as to make it appear that he had a gun. Mrs. R., who was seven months pregnant, then appeared from the bedroom. Defendant told the couple to get on the floor and, as they didn't do it fast enough, threatened to blow their brains out. Mentioning his wife's condition and that their little girl was in the bedroom, Mr. R. told defendant to take whatever valuables they had but pleaded with defendant to leave them alone. Defendant then ordered the couple into the living room and told Mrs. R. to get something to tie her husband up. When Mrs. R. replied "What?", defendant again threatened to blow their brains out. Upon being told by her husband to get some belts and ties from the bedroom, Mrs. R. did so and then was directed to bind her husband's wrists and ankles together. Defendant had Mr. R. hop into the bedroom and Mrs. R. was directed to tie him to the bed. As Mrs. R. was doing so, defendant used his left hand to take some jewelry and cash. His right hand remained in the pocket of his jacket.
Upon being sure that Mr. R. was secure, defendant removed his right hand from his pocket and struck Mr. R. in the mouth. He immediately replaced his hand in the pocket and stepped back. Mrs. R. was then grabbed and dragged into the entry-way between the bedroom and the living room where defendant proceeded to sexually assault her. Seeing the bottom of his wife's feet and hearing what he believed to be a pants zipper being opened, Mr. R. managed to free himself. He grabbed a ceramic cheese crock filled with 26 rolls of pennies and walked into the entryway. He saw defendant, with his pants down, on top of his wife. Mr. R. struck defendant on the head with the crock and, when defendant stood up, charged at him driving him back against the wall, then hit him in the chest and drove his arms apart so he could not reach for the gun. At the same time, Mr. R. yelled for his wife to get a knife. She came back with a carving knife and at first tried to stab defendant. Fearing that defendant would seize the knife from his wife, Mr. *369 R. told her to hand it to him. As she was handing the knife to her husband, defendant grabbed the blade. Mr. R., who had the handle, pulled it through his hand and placed the knife to defendant's belly and threatened to cut him up. Defendant was thus subdued while Mrs. R. called the police and ran to a neighbor. Two police officers arrived shortly after Mrs. R. left.
Upon their arrival, the police found Mr. R. on top of defendant holding a knife in his hand. R. got off of defendant and told the officers that Mrs. R. had just been raped by defendant. Defendant, whose pants and underwear were around his ankles, stated that Mr. R. had attacked him and was going to cut off his testicles. After conducting a pat-down search for weapons and finding none, the officer informed defendant that he was under arrest. Defendant resisted arrest and had to be subdued. He was taken to police headquarters where a further search disclosed $72 and assorted jewelry in his pockets. Although defendant refused medical treatment for the knife wound to his hand, he was transported to the hospital for necessary medical treatment. While there, a blood sample was taken which upon testing revealed an alcohol level of .194. Subsequently, one of the officers had his hand and shoulder x-rayed because of the kicks received from defendant while arresting him.

I.
Defendant argues that his motion for acquittal of the kidnapping charge was improperly denied in view of the asserted failure of the State to prove all the elements of the offense. Specifically, it is contended that the evidence did not establish the required element of the unlawful confinement of another for a substantial period.
N.J.S.A. 2C:13-1b defines kidnapping, as applicable to the present case, as the unlawful confinement of another for a substantial period with the purpose of facilitating the commission of any crime or flight or inflicting bodily injury or terrorizing *370 the victim or another. Unlawful confinement is confinement accompanied by force, threat or deception. N.J.S.A. 2C:13-1d. Relying upon and quoting from State v. Masino, 94 N.J. 436 (1983), we observed in State v. Smith, 210 N.J. Super. 43, 61 (App.Div. 1986), certif. den. 105 N.J. 582 (1986) that "[t]he `heart' of N.J.S.A. 2C:13-1b is the `isolation and increased risk of harm' to the victim." In Masino, the court explained that while the Legislature intended harsh treatment for kidnappers, "by maximizing the kidnapper's incentive to return the victim unharmed, the legislature realized that the risk of harm attendant upon isolation is the principal danger of the crime." 94 N.J. at 446. Thus, where the kidnapping is alleged as incident to another offense, the asportation or confinement of the victim must be viewed "in terms of sufficient criminal significance that is more than incidental to the underlying crime and that substantially increases the risk of harm to the victim." Id. at 447; State v. Smith, 210 N.J. Super. at 61. In other words, did the nature of the confinement and the duration of the victim's isolation render the victim more vulnerable to harm beyond that created by the underlying criminal intrusion itself? State v. Bryant, 217 N.J. Super. 72, 81 (App.Div. 1987), certif. den. 108 N.J. 202 (1987). Confinement of the victim, although facilitating the commission of a crime and thus satisfying the purpose element of the offense, does not meet the substantial period test in the absence of a consequent increased risk of harm to the victim. Masino, 94 N.J. at 445-447; Smith, 210 N.J. Super. at 60-61.
That the "substantial period" requirement of N.J.S.A. 2C:13-1b must be considered in terms of the increased risk of harm by reason of the isolation of the victim as well as the nature of the confinement is evident from our decision in State v. Bryant, 217 N.J. Super. 72 (App.Div. 1987). There, elderly victims were bound and gagged during the course of the robbery of their homes and remained in that condition for 10 minutes in one case and for an unspecified period in another after the perpetrators had left. In each of the robberies the victims were hit, threatened *371 and generally terrorized as a means of having them reveal the location of valuables in their houses. While concluding that the restraint of the victims during the robbery itself did not satisfy the confinement element of the statute, as they were thus not rendered more vulnerable to harm beyond that imposed by the robberies, we determined that the same was not true as to victim's confinement which facilitated the perpetrators' flight from the premises. By so isolating the victims, the risk of harm to them was increased. We reasoned:
Once the robbers had left, there would be nobody to help the bound and gagged elderly victims if they were unable to breathe or suffered a heart attack. Had the victims been unable to free themselves for an extended period of time, as defendants obviously intended, there was a significant possibility of additional discomfort, physical injury or even death. The determination, therefore, by the trial judge that leaving the elderly victims bound and gagged constituted kidnapping within the meaning of N.J.S.A. 2C:13-1b is supported by the evidence and the reasonable inferences therefrom. [217 N.J. Super. 81]
Here, however, the proofs failed to establish that the unlawful confinement of Mr. R. increased the risk of harm to him. While Mr. R's confinement facilitated defendant's assault of Mrs. R., thereby satisfying the purpose element of the offense, it did not render him more vulnerable to harm beyond that presented by defendant's unlawful entry into the home. Unlike the Bryant victims whose confinement and isolation after the robbers fled increased their risk of harm, Mr. R. would not have been left alone following defendant's flight after the commission of the crimes. Under the circumstances of the present case, a reasonable jury considering all the evidence in its entirety and giving the State the benefit of all reasonable inferences could not find defendant guilty of kidnapping within the meaning of N.J.S.A. 2C:13-1b as there was no increased risk of harm to Mr. R. due to his being isolated. Defendant's motion for acquittal as to this offense therefore was improperly denied.

II.
We find no merit in defendant's contention that the trial judge erred in denying his motion for acquittal with respect to *372 the first degree robbery charge. The State's evidence was sufficient to permit a finding that defendant possessed an object which would lead the victims reasonably to believe it was capable of producing death or serious injury. N.J.S.A. 2C:11-1; R. 3:18-1.
A robbery is of the first degree "if in the course of committing the theft the actor ... is armed with, or uses or threatens the immediate use of a deadly weapon." N.J.S.A. 2C:15-1b. The statutory definition of a deadly weapon, in pertinent part, is "any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate,... which in the manner it is fashioned would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury." N.J.S.A. 2C:11-1c. Here, defendant pretended to have a gun by placing his hand in his jacket and creating a bulge. The pretension was accented by defendant's statement that he had a gun and his occasional threat to blow the victims' brains out if they failed to do what he ordered. The R's had every reason to believe that defendant possessed a gun. Defendant's use of his hand to simulate a gun and the reasonable sensory impression thereby created in the victims satisfied the statutory requirements for a first degree robbery offense. State v. Hutson, 107 N.J. 222 (1987); State v. Cooper, 140 N.J. Super. 28 (Law Div. 1976), rev'd on other grounds, 165 N.J. Super. 57 (App.Div. 1979), certif. granted 81 N.J. 56 (1979), dismissed as moot 81 N.J. 261 (1979), dismissed as moot 87 N.J. 304 (1981); State v. Hopson, 122 Wis.2d 395, 362 N.W.2d 166 (Ct.App. 1984).
While the jury instructions did not contain a detailed explanation of the subjective standard set forth in N.J.S.A. 2C:11-1c pertaining to the reasonable belief of the victims that the object possessed by defendant was capable of producing death or serious bodily injury, we are satisfied that the charge as a whole accurately reflected the pertinent law. See Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-592 (1966). Surely, the instruction that "it is the intent of the law to provide the same *373 sanction for robbery committed by simulating the use of a weapon as for one who perpetrates a robbery with an actual firearm" adequately conveyed to the jury that a conviction of first degree robbery required their finding that the R's had a reasonable belief that defendant possessed a gun. Moreover, defendant has failed to demonstrate that the charge in this respect was clearly capable of producing an unjust result. R. 2:10-2.

III.
Defendant's further argument that he was deprived of a fair trial because of the admission of unduly prejudicial testimony is unpersuasive. We discern no improper questioning of the victims as to other civil crimes or wrongs committed by defendant in violation of Evid.R. 55 or concerning Mrs. R's need to permanently move from the house.
The claimed violation of Evid.R. 55 assertedly occurred by permitting testimony by Mr. R. that defendant "was totally in control ... he was in complete control the whole time," and Mr. R's impression that "he (defendant) knew exactly what he was doing." Mrs. R's testimony that defendant "seemed very, very sure of himself. Like he knew exactly what he was doing," is also suggested as violating Evid.R. 55. This appellate argument is based upon a strained and unwarranted interpretation of the challenged testimony. These statements were not directed to any prior criminal activity of defendant but merely reflected the R's impression of defendant's mental awareness and deliberateness in executing the crime.
The claim that testimony concerning Mrs. R's inability to live in the house after the attack was so inflammatory and prejudicial as to have tainted the verdict lacks persuasiveness in light of the jury's knowledge of the details of defendant's criminal conduct toward both victims. Counsel's failure to object to this testimony also suggests that in the atmosphere of the trial it did not have the inflammatory and prejudicial effect now asserted by defendant. See State v. Wilson, 57 N.J. 39, 51 *374 (1970). In any event, we are convinced that this testimony was incapable of producing an unjust result. R. 2:10-2.

IV.
In reviewing the sentences imposed on defendant we are limited to a determination of whether the correct sentencing guidelines were followed, whether there was substantial evidence in the record to support the findings of fact upon which reliance was placed in applying those guidelines and whether the application of the guidelines resulted in sentences which were so unreasonable as to be shocking to the judicial conscience. State v. Roth, 95 N.J. 334, 364-366 (1984). Our review of the record satisfies us that the sentencing guidelines were properly followed and that there was adequate evidentiary support for the conclusion of the sentencing judge as to the applicable factors relied upon in the fashioning of the overall sentence. Ibid.
The circumstances surrounding the offenses committed by defendant compels us to concur with the trial judge's observation "that based upon what took place in this courtroom, the evidence that was produced against Mr. LaFrance, almost any sentence would be appropriate and proportionate." However, there clearly was factual support for the aggravating factors found by the judge to be applicable: the nature and circumstances of the offenses, the gravity and seriousness of the harm inflicted on the victims, the risk that the defendant will commit other offenses and the need for deterrence. While it was noted that defendant's offenses included assaults against the arresting officers, it is not clear that this was considered as an aggravating factor leading to a more severe sentence. See State v. Link, 197 N.J. Super. 615, 619-620 (App.Div. 1984), certif. den. 101 N.J. 234 (1985). In any event, in view of the other aggravating factors, such consideration did not render the increased sentences for such offenses unfair or unjust.
The record also supports the judge's conclusion as to the absence of any mitigating factors. Defendant's contention that *375 the court erred in this respect by ignoring the undisputed intoxication of defendant and the claimed absence of an intent to cause serious harm is meritless. The testimony of both victims indicated that defendant was in complete control of his faculties during the perpetration of the crimes. Also, one of the arresting officers considered that defendant's behavior did not suggest that he was intoxicated. Although defendant may not have had the intent to cause serious harm when he entered the R. home, N.J.S.A. 2C:44-1b(2) only requires the perpetrator to formulate an intent prior to the commission of an offense. Surely, such an intent may be inferred from defendant's conduct toward the R's after he gained entry into their home. Further, while the reasons for the several concurrent and consecutive sentences imposed were not fully set forth, we are satisfied that the principles enunciated in State v. Yarbough, 100 N.J. 627 (1985), cert. den. 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986) were not violated.
For the reasons stated, the convictions and sentences are affirmed except as to the conviction and sentence for kidnapping which is reversed. The matter is remanded to the Superior Court, Law Division, Passaic County, for the entry of a corrected judgment.