229 N.J. Super. 374 (1988)
551 A.2d 991
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STEVEN DEUTSCH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1987.
Remanded December 30, 1987.
Findings on Remand filed February 14, 1988.
Reargued October 11, 1988.
Decided December 12, 1988.
*375 Before Judges O'BRIEN and STERN.
*376 George G. Frino argued the cause for appellant (DeCotiis, Frino & Lundsten, attorneys; Alfred C. DeCotiis and William R. Lundsten, on the brief).
J. Grall Robinson, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; J. Grall Robinson, of counsel and on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
In our decision of December 30, 1987 on defendant's appeal from his conviction of kidnapping (N.J.S.A. 2C:13-1b(1)), aggravated assault (N.J.S.A. 2C:12-1b(1)), and aggravated sexual assault (N.J.S.A. 2C:14-2a(6)), we remanded the case to the trial judge for the limited purpose of conducting an evidentiary hearing on defendant's claim of ineffective assistance of counsel. We retained jurisdiction and we now affirm the assault convictions and reverse and remand for a new trial on the kidnapping charge.
The facts are fully set forth in our earlier opinion as well as defendant's contentions as to his claim of ineffective assistance of counsel. Although defendant asserted five areas in which his attorney failed to investigate, we found no merit to four of them. However, with respect to the fifth, i.e., the existence of fact witnesses whose testimony might have altered the outcome of the trial, we remanded to the trial judge to hear the testimony of those witnesses to determine whether or not the proffered evidence would have been admissible at trial and if admitted would probably have affected the outcome of the trial.
Pursuant to our remand, the trial judge conducted an evidentiary hearing at which eight witnesses testified, including the attorney whose assistance was alleged to have been ineffective. The other witnesses were neighbors in the apartment building where defendant's parents resided and where defendant allegedly took M.B. on the night in question, kept her against her *377 will and assaulted her. Testimony was also received from the doorman of the building, a bartender at the restaurant-bar where defendant and M.B. met on the night in question, and a private investigator retained by defendant.
The trial judge made findings of fact and conclusions of law which were filed on February 24, 1988.[1] After citing Strickland v. Washington, 466 U.S. 668, 690-691, 104 S.Ct. 2052, 2065-2066, 80 L.Ed.2d 674, 695-696 (1984), the trial judge concluded:
Armed with the discovery furnished by the State, however, and the statement of the victim concerning screams and other painful sounds, it appears that it was incumbent on trial counsel to make inquiry either personally or through an investigator as to whether or not anyone heard or did not hear sounds and/or screams on March 14, 1988 at or near midnight. Such inquiry it is alleged would have produced the witnesses Ann Vitucci, Angelo Vitucci, Ruth Hammer, Lynn Hoffstein and Robert O'Toole.
After reviewing the testimony of each of these witnesses which the judge concluded would probably have been admissible, the judge concluded:
Therefore, although counsel was deficient in not investigating the existence of the witnesses aforementioned, such error was not sufficiently serious to deprive defendant of a fair trial and the results of the trial based on the totality of the evidence was reliable.
We agree with the finding of the trial judge that counsel was deficient in his failure to investigate. Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Strickland v. Washington, 466 U.S. at 690, 104 S.Ct. at 2065, 80 L.Ed.2d at 695. We recognize that the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Id. We note that on cross-examination John Barna, the investigator hired by defendant, testified that he told defendant he wanted to get into the apartment, but was told by defendant, "Don't bother anybody on that floor" because he "could not" bother his *378 father. However, Barna suggested to defendant's attorney that he contact the building's attorney, or Mr. Ross, the manager, and the attorney did neither.
As noted in our original opinion, the Strickland court announced a simple two-part test for evaluating claims of ineffectiveness of counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable. [Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.]
The Strickland standard has been adopted by our Supreme Court in State v. Fritz, 105 N.J. 42 (1987).
We are satisfied that the trial judge correctly concluded that defendant has shown that his counsel's performance was deficient. After making that finding, the trial judge properly turned to the question as to whether or not that deficient performance prejudiced the defense, i.e., did defendant show that counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. The trial judge concluded that defendant had not made such a showing. We disagree.
Defendant was convicted of three offenses, kidnapping (N.J.S.A. 2C:13-1b(1)), aggravated sexual assault (N.J.S.A. 2C:14-2a(6)), and aggravated assault (N.J.S.A. 2C:12-1b(1)), which was merged for sentencing into his conviction for aggravated sexual assault. At oral argument, both the State and defendant's counsel agreed that the question whether defendant was prejudiced could be answered differently with respect to the kidnapping charge as opposed to the assault charges. As to the latter charges, the testimony of Lynn Hoffstein, who lived in the apartment across the hallway from the apartment in which the assault occurred, and Ruth Hammer, who lived in the adjacent apartment and whose bedroom was next to the bedroom of the *379 Deutsch apartment, was relevant. As to these witnesses, the trial judge found:
Ruth Hammer, in fact, had no specific recollection of March 14, 1984, but said she must have been home (and heard no sounds coming from the Deutsch apartment) since she was always home on Wednesday evenings.
....
Lynn Hoffstein lived in the apartment across the hallway from Deutsch's apartment. `I was home that night' (March 14, 1988) [sic] heard nothing  I might have had company that night  I might have had the TV on.
....
Hammer and Hoffstein; again, negative testimony, was not that satisfying and certain to alter the physical evidence of injuries and photographs produced at the trial.
We agree with that conclusion. Furthermore, the testimony of the doorman, Robert O'Toole, with regard to the assault charges, was that M.B. was calm and he didn't observe any bruises or cuts on her face[2] nor did she make any complaint to him that she had been assaulted. On the other hand, as observed in our original opinion, O'Toole's testimony cut both ways since it refuted defendant's testimony that M.B. left the apartment at about 4:00 a.m.
We agree with the trial judge that the failure of counsel's investigation to reveal these witnesses, although deficient, did not prejudice the defense as to the assault charges. Initially we observe that, according to Barna, defendant did not wish him to talk to the neighbors because he didn't want to bother his father. Furthermore, defendant acknowledged that M.B. had been with him in his parents' apartment on the night in question. Evidence that during the night or early morning hours M.B. suffered substantial injuries was overwhelming. The evidence of those injuries, corroborated by the police officers, the prosecutor's investigator, the photographs and the testimony of the doctor, suggests that either the assault was not as noisy as M.B. had testified, or the neighbors were not at home or were otherwise engaged on the night in question. *380 There is nothing to support defendant's speculation that M.B. left the building at about 4:00 a.m. and returned between 8:00 and 9:00 a.m. when she was seen by O'Toole, and that she was injured somewhere else sometime between 4:00 a.m. and 8:00 a.m. On the contrary, all of the evidence strongly supports the inference that M.B. was assaulted by defendant, and therefore the conclusion that he was guilty of the aggravated assault and aggravated sexual assault as found by the jury was more than reliable. As to those two charges, the merged convictions and sentence imposed are affirmed.
We reach a different conclusion as to the kidnapping charge. The first count of the indictment charged that on the day in question in the Borough of Cliffside Park,[3] defendant
... did kidnap [M.B.] by unlawfully confining her for a substantial period of time for the purpose of facilitating the commission of aggravated assault and/or aggravated sexual assault, as alleged in the Second and Third counts herein, or the flight thereafter, contrary to provisions of N.J.S. 2C:13-1b1.
As noted by defendant in his original brief, some confusion crept into the judge's charge as to the elements of that offense. In his initial charge, the trial judge told the jury that the first element which the State must prove is that defendant unlawfully removed M.B. a substantial distance from the vicinity where she was found. He then said:
Second, that Deutsch unlawfully confined [M.B.] for a substantial period, and in this case you have an alternative, either a substantial distance from the vicinity where she was found or that the defendant unlawfully confined [M.B.] for a substantial period. You may find that the confinement had begun, if there were any confinement at all, not at Pronto's [the New York bar where they met], that that might have been the voluntary exit, but that the confinement may have occurred subsequent thereto, either on Madison Avenue, maybe in  it may have commenced there, it may have commenced right in 300 Winston Drive, or it may not have occurred at all of course. But that's what you have to find, if the State has proven either substantial removal from the vicinity where she was found  actually, the State does not allege that, the State just alleges that she was  well, I can understand that. In the State's summation they conceded that the confinement did not commence in New York, they said that was a voluntary action of [M.B.], the allegation of the State.

*381 So, the State's position is, and you have to find that it was proven beyond a reasonable doubt, is that Deutsch unlawfully confined [M.B.] for a substantial period and that the confinement was for the purpose of facilitating the commission of any crime.
....
The action condemned by this law, really, is was the unlawful removal or confinement accomplished, that confinement, accomplished by force, threat or deception, accomplished without the consent of the person, accomplished for the purpose of facilitating the commission of the crime? The unlawful confinement condemned by the statute is was the confinement accomplished by force, threat or deception, accomplished without consent of the person. For a substantial period of time. In other words, the confinement must be for a period of time which causes more than a minor interference with the victim. Or a confinement which is more than merely incidental to other actions taken at that time by the kidnapper.
The jury was then instructed that it was required to determine if the kidnapper released the victim unharmed and in a safe place prior to his apprehension in order to ascertain the grade of the offense. Neither party excepted to the charge.
During its deliberations, the jury asked the following question:
With regard to the first charge of kidnapping, N.J.S. 2C:13-1b(1), the jury would request that the court reexplain the law governing the charge specifically focusing on the issue of unlawful confinement.
In response to this question, the trial judge recharged the jury on kidnapping. In the course of that charge, he said:
The pertinent part of the law which covers this count in the indictment reads that a person is guilty of kidnapping if he unlawfully [sic] another for a substantial period with purpose to facilitate the commission of a crime.
The position of the State is that this is what occurred in this case, that's why you have that count in the indictment, that he unlawfully confined the victim at 300 Winston Towers, Apartment 1010, and prior thereto, during that period of time, which the State contends is a substantial period of time. [Emphasis supplied.]
The judge then recharged the jury, including that the State was required to prove that defendant unlawfully removed M.B. a substantial distance from the vicinity where she was found. He then said:
The unlawful confinement, again, condemned by the statute is a confinement accomplished by force, threat or deception for a substantial period of time. In other words, the confinement must be for a period of time which causes more than just a minor interference with the victim, or it must be a confinement *382 which is more than merely incidental to other actions taken at the time by the kidnapper.
This last part which is more than merely incidental to other actions, if you commandeer a car and the fellow is a passenger in the car and you drive it two blocks and then get out, that's not the kidnapping they're talking about under the statute. The unlawful confinement must be more than a minor interference with a victim and it must be for, as I have said to you, a substantial period of time.
At the conclusion of the supplemental instruction, the prosecutor said:
Judge, the State in this case is not alleging an unlawful removal, it is merely alleging unlawful confinement. It may be my misunderstanding but I thought you said they have to find, number one, that he unlawfully removed her and, number two, that he unlawfully confined her but that's not what we alleged in the indictment, merely that it was an unlawful confinement, the b section of the statute. I thought it was an either/or, I don't have the statute in front of me, but I thought it was an either/or.
The trial judge then reassembled the jury and gave them the following supplemental instructions:
Ladies and Gentlemen of the Jury, in my second presentation to you in trying to answer your questions I may have confused you. I know initially I pointed out to you that the State's position was, in this case, that there was no unlawful removal. That is not required to be found.[4] In other words, as I recall, the evidence, the State's position is that there was a willing and voluntarily  voluntary leaving from Pronto's restaurant by the victim at that time. That you did not have to find to be unlawfully  an unlawful removal at that time. To satisfy the statute in this particular case you have to find an unlawful confinement. The unlawful confinement could have been next door butm [sic]  it isn't in this particular case, if you find one at all, but all you have to find is that the defendant unlawfully confined [M.B.] for a substantial period, whatever the location. That's all you have to find with respect to that. [Footnote supplied.]
So, if I in any way confused you by  perhaps you might be thinking that there had to be the unlawful removal, my statement in the last discussion with you, just revert back to initially when I said that's not necessary, that's not the position of the State in this case.
Neither party excepted to the second supplementary charge.
Relying upon State v. Masino, 94 N.J. 436 (1983), defendant argued in his original brief before us that the application of this *383 statute to the facts in this case was totally unwarranted. Defendant then cited our decision in State v. Smith, 210 N.J. Super. 43 (App.Div.), certif. den. 105 N.J. 582 (1986), where we concluded that the rationale in State v. Masino, as to the "substantial distance" phrase applies to the "substantial period" language as well, where the kidnapping is alleged as incident to another crime. The heart of N.J.S.A. 2C:13-1b is the "isolation and increased risk of harm" to the victim. State v. Masino, 94 N.J. at 447. The defendant then noted the following from our opinion in the Smith case:
Thus, the court mandated that in the future trial judges should instruct juries `in terms of sufficient criminal significance that is more than incidental to the underlying crime and that substantially increases the risk of harm to the victim.' [Ibid.]
We conclude that the same rationale applies to the confinement provisions and that the same instruction must be given with regard to confinement for a `substantial period.'
Defendant then notes that, as in the Smith case, the trial judge in this case did not give such a charge, although in the Smith case we concluded that it did not rise to the level of reversible error. However, in this case, defendant argues:
The kidnapping charge in the case at bar was fatally deficient in two respects. It was clearly confused by virtue of the judge instructing the jury on the issues of unlawful removal despite the fact that the State was not pursuing a prosecution theory based upon that aspect of the kidnapping statute. The judge's attempt to eliminate any confusion simply compounded the issue by virtue of his exhorting the jury to simply return back to his original instruction. Placing an unlawful removal issue into the jury's psyche in view of trial counsel's failure to delve into the facts surrounding the alleged removal and the confinement substantially eliminated a careful deliberation of the facts.
Secondly, and probably much more serious, was the court's abject failure to instruct the jury as to the essential element of `confinement.' A careful analysis of the facts in the case at bar demonstrates that it is difficult to imagine how one who has been alleged to have committed an assault could not `confine' the victim in order to effectuate the assault. Obviously, an assault entails a violation of the person in terms of creating a confinement in order to commit the crime of assault. Thus, the jury was faced with an inherently confusing charge which omitted an instruction as to the essential element of confinement for a substantial period of time.
Moreover, a careful review of the facts available to trial counsel would have substantially undercut the State's contention that there was an unlawful confinement for a substantial period. Adjacent apartment owners heard no *384 unusual noise emanating from that apartment, the appellant and [M.B.] rode up on an elevator demonstrating an apparent playful manner.
Since counsel filed his brief, we have decided another case in which defendant was charged with kidnapping by unlawful confinement of another for a substantial period with a purpose of facilitating the commission of any crime or flight. In State v. LaFrance, 224 N.J. Super. 364 (1988), we said at p. 370:
Relying upon and quoting from State v. Masino, 94 N.J. 436 (1983), we observed in State v. Smith, 210 N.J. Super. 43, 61 (1986), certif. den. 105 N.J. 582 (1986), that `[t]he heart' of N.J.S.A. 2C:13-1b is the `isolation and increased risk of harm to the victim.' In Masino, the court explained that while the Legislature intended harsh treatment of kidnappers, `by maximizing the kidnapper's incentive to return the victim unharmed, the Legislature realized that the risk of harm attendant upon isolation is the principal danger of the crime.' 94 N.J. at 446. Thus, where the kidnapping is alleged as incident to another offense, the asportation or confinement of the victim must be viewed `in terms of sufficient criminal significance that is more than incidental to the underlying crime and that substantially increases the risk of harm to the victim.' Id. at 447; State v. Smith, 210 N.J. Super. at 61. In other words, did the nature of the confinement and duration of the victim's isolation render the victim more vulnerable to harm beyond that created by the underlying criminal intrusion itself? State v. Bryant, 217 N.J. Super. 72, 81 (App.Div. 1987), certif. den. 108 N.J. 202 (1987). Confinement of the victim, although facilitating the commission of a crime and thus satisfying the purpose element of the offense, does not meet the substantial period test in the absence of a consequent increased risk of harm to the victim. Masino, 94 N.J. at 445-447; Smith, 210 N.J. Super. at 60-61.
The trial judge here referred to confinement in terms of more than a minor interference to the victim, although he did say "more than merely incidental to other action taken at the time by the kidnapper." However, this did not adequately explain to the jury the concept of "isolation and increased risk of harm" to the victim. It is unnecessary for us to rule upon defendant's arguments with respect to the kidnapping charge since we conclude that, in any event, the ineffectiveness of his counsel deprived him of a fair trial on the kidnapping offense within the second prong of the Strickland test. We make the foregoing observations not only because of the necessity for a retrial of the kidnapping charge but also because the inadequate charge underscores that the jury's verdict in the kidnapping charge may well have been different had other evidence been offered, *385 and that defendant's conviction was unreliable due to the inadequate representation which he received.[5]
As to the effect of the deficiency of counsel's investigation on the defense of the kidnapping charge, we first observe that M.B.'s testimony was that, although she left the bar in New York with defendant voluntarily, her confinement began shortly thereafter and continued into the State of New Jersey. She testified as to her inability to get out of the automobile because of the automatic door locks, and that defendant went through several red lights on his way to the George Washington Bridge. She testified, "the further we went the more frightened I got" and that defendant didn't stop at any of the red lights on Madison Avenue. She said, "I was scared to death. I knew I was in a lot of trouble and I was petrified," and that he told her to "shut up." She said that she had reached for the door handle and was going to jump out of the car but it was locked. He kept saying to her, "Shut up bitch." After crossing the bridge, she said, he stopped the car, got very mad at her and hit her in the face. When they arrived at the apartment building, she testified, they went into the underground garage where he told her not to make any noise. She was unable to run away because the car was parked some distance from the entrance. She then said he put his arm around her arm tightly. Although she was within five feet of a man who worked there and she looked right at him, she stated that she was unable to speak:
I wanted to say something to him, and I looked right at him, I looked him right in the eye, and nothing came out of my mouth, I couldn't say anything, I was so frightened  nothing came out of my mouth at all.
She testified (as did defendant) there was no one on the elevator as they went upstairs to the tenth floor. Once they *386 got inside the apartment, she testified that defendant's demeanor was different and he didn't yell at her anymore until later.
Contrary to the testimony of the victim is the testimony of Mr. and Mrs. Vitucci that they saw defendant and a female going up in the elevator on the night of the crime. According to the Vituccis, both of the people they saw were intoxicated,[6] were giggling and kissing, certainly not indicative of someone being kidnapped or held against her will.[7] We recognize that both the Vituccis described the victim as having black hair, whereas the photographs taken of M.B. on the day following the assault showed her to be a blonde. Notwithstanding this discrepancy and that Mrs. Vitucci claimed she learned about the "rape" at her Wednesday card game, whereas the crime occurred that night, we believe this testimony would have been highly significant as to the charge of kidnapping because of her testimony that she made her observation on the night of the crime. Furthermore, as we observed in our initial decision, evidence of M.B.'s conduct on prior occasions at the bar in New York where she met defendant concerning her accompanying *387 people from the bar might also be relevant on the kidnapping charge.
We agree with defendant that the evidence proffered at the remand hearing, which the trial judge found to be admissible, was so significant on the kidnapping charge that the failure to present this evidence because of ineffective investigation deprived defendant of a fair trial on the kidnapping issue.[8] We further observe that there is merit to defendant's suggestion that the assault required defendant to "confine the victim" in order to commit the crime. According to M.B., during the sexual assault she became unconscious and when she awoke the defendant did not prevent her from leaving the apartment. There was no evidence of continued confinement after the assaults were completed. On remand, the trial judge shall instruct the jury that confinement for a "substantial period" is more than incidental to the underlying crime and substantially increases the risk of harm to the victim. State v. Smith, 210 N.J. Super. at 61. In other words, did the nature of the confinement and the duration of the victim's isolation render the victim more vulnerable to harm beyond that created by the underlying criminal intrusion itself. See State v. LaFrance, 224 N.J. Super. at 370.
The conviction for aggravated sexual assault into which the conviction for aggravated assault was merged is AFFIRMED. The ten-year sentence imposed for those merged offenses and the $5,000 penalty payable to the Violent Crimes Compensation Board is also AFFIRMED. The conviction for kidnapping is REVERSED and the sentence imposed thereon vacated and the charge REMANDED for a new trial.
*388 STERN, J.A.D., concurring.
I concur in the opinion of the court and write briefly only to express what is not involved on this appeal. I do so because we have decided this case in a manner which may appear to be unique by holding that defendant is entitled to relief with respect to one of two convictions simultaneously entered.
As noted by Judge O'Brien, in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), reh. den. 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), the United States Supreme Court articulated a two prong test for evaluating whether a defendant was denied effective assistance of counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable. [466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.]
Thus, it is possible that counsel was deficient but, as in this case, the deficient performance prejudiced some but not all of the convictions. This is particularly true because, generally, prejudice is not presumed and must be demonstrated by the criminal defendant. See United States v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657, 667-670 (1984); State v. Fritz, 105 N.J. 42, 60-61, 63 (1987). Specifically, defendant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In other words, there must be a "probability sufficient to undermine the confidence in the outcome." Id.
Our Supreme Court has followed the same approach and has adopted the Strickland standard regarding claims of ineffective assistance of counsel under the New Jersey Constitution. *389 N.J.S.A. Const. (1947), Art. I, par. 10. See State v. Fritz, supra, 105 N.J. at 56-58 (1987). As our Supreme Court has stated, "if counsel's performance has been so deficient as to create a reasonable probability that [the] deficiencies materially contributed to defendant's conviction, the constitutional right will have been violated." 105 N.J. at 58.
In evaluating whether counsel was deficient and if the deficiency prejudiced the defendant with respect to the particular conviction, in most instances the subject must be presented to the trial judge who heard the testimony, if the case was tried. See State v. Fritz, supra, at 63, 67; United States v. Cronic, supra. The judge must consider all appropriate factors and hear the testimony of defendant's trial counsel in order to evaluate the reasons for his conduct. See Evid.R. 26(2)(c). I believe evaluation must consider whether defendant's strategy with respect to one count or charge may have affected his presentation with respect to another count or charge. For example, it might well be that defendant knowingly elected not to contest (or even to tacitly admit) his guilt or involvement with respect to one offense, usually a lesser offense, in order to support his contest of the State's proofs with respect to another offense. In that event, what might facially appear to be inappropriate representation with respect to one or more charges could actually be the product of thoughtful consideration.
Moreover, there may be limitations placed upon the defense counsel by defendant such as the limitations placed upon Investigator John Barna in this case with respect to the decision not to disturb the neighbors of defendant's father. Those limitations could affect preparation on some but not all of the charges.
I am satisfied that defendant sufficiently demonstrated that counsel was deficient and that the deficiency cannot be attributed to limitations placed on counsel's investigation by defendant or to trial strategy with respect to any count. I am also *390 satisfied that the deficiencies as noted by Judge O'Brien prejudiced defendant to the extent that the kidnapping conviction  but only that conviction  was rendered unreliable.[1]
NOTES
[1] We directed that supplemental briefs be filed and heard oral argument on October 11, 1988.
[2] The photographs of M.B. taken the day after the assault and received into evidence do not depict any substantial cuts or bruises on her face.
[3] In our original opinion we incorrectly identified the locale as Fort Lee.
[4] We recognize that inclusion of the language as to unlawful removal improperly increased the burden of the State and benefitted defendant. Nonetheless, it added to the confusion.
[5] We do not suggest that counsel's failure to object to the charge may itself be a basis for the claim of incompetence of counsel.
[6] We observe that John Barna, the investigator hired by defendant, gave the following testimony at the remand hearing:

THE COURT: Did Deutsch tell you that something took place?
THE WITNESS: Deutsch told me that they were up in the apartment. That he took her up there. She had a few drinks. She had admired  she was admiring the scenery over in New York. How beautiful it was. She admired the apartment. It was beautiful. It was 
THE COURT: Did Deutsch tell you if anything sexually took place 
THE WITNESS: He didn't recall. He said he got drunk. And he said he fell asleep. When he woke up she was sleeping. And he left. And when he came back, she was gone.
THE COURT: He didn't recall whether anything sexually happened?
THE WITNESS: Did not.
This of course totally contradicts defendant's testimony at the trial wherein he swore that nothing sexual occurred except for his refusal of M.B.'s sexual advances and that when he awoke at 4:00 a.m. M.B. was gone.
[7] By our reference to the testimony of the Vituccis we do not intend to limit defendant in the presentation of any relevant testimony, on the retrial of the kidnapping charge.
[8] We emphasize that our conclusion might well be different had trial counsel's failure to interview or call certain witnesses been attributable to limitations or directions imposed by defendant at the time of the retainer or thereafter. Nor does the record justify a conclusion that counsel's inadequate handling of the first count was somehow attributable to his strategy with respect to any other count.
[1] While not a basis for a presumption of prejudice, lack of preparation can be a basis for "actual ineffectiveness," see United States v. Cronic, supra, 466 U.S. at 661, 104 S.Ct. at 2048, 80 L.Ed.2d at 669; State v. Fritz, supra, 105 N.J. at 63, and I agree with Judge O'Brien that in a case such as this, an error in the judge's instructions to the jury, particularly in the absence of objection, can affect the finding of prejudice.